The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning. Court is calling People v. Null case number 4-23-0851. I'd ask counsel for the appellate to please state your name for the record. Elliot Borchardt from the Office of the State Appellate Defender. And counsel for the appellee, can you state your name? Katrina Kuhn for the appellate prosecutor. All right. Counsel for the appellate, you may proceed. Thank you, Your Honors. And good morning, Your Honors. Good morning, counsel. May it please the court. I'm Elliot Borchardt from the Office of the State Appellate Defender. I'm appearing on behalf of the defendant, Appellant Matthew Null, on this case. Mr. Null was sentenced to an aggregate term of 90 years in prison. For multiple reasons, that sentence cannot stand. Today, I plan to talk about Issue 1 and how counsel is ineffective for failing to file a motion to dismiss the aggravated arson and obstructing justice charges on speedy trial grounds and compulsory jointer grounds, convictions that were responsible for 30 of those 90 years. Additionally, I plan to talk about Issue 4 and how the court failed to consider a mandatory factor of mitigation at sentencing, which is something that contributed to the length of the sentence. Now, I know there are a ton of other issues raised in the briefs, and I plan to stand on the briefs for those issues this morning, but I am happy to answer any questions this court has regarding those issues. Now, starting out with this compulsory jointer and speedy trial issue, I think this really has two key components to it. First of all, the state's knowledge, and second of all, whether the subsequent charges were based on the same act as the original murder charge. And with regards to this knowledge piece, one thing that we have here that I don't think we have in a lot of cases is a probable cause affidavit that was filed under oath by the Pekin County State's Attorney three days after the events at issue and at the day that Mr. Knoll was charged. And it tells us three rather important things. First of all, that there was a fire and that the fire marshal believed that this fire was not an accident. Second of all, Kaylee was killed via strangulation prior to the fire. And third, Mr. Knoll's phone was present at the scene of the fire for several hours on the day of the fire. So I think this leads one to believe that there's a reasonable chance that this fire was set knowingly, and not only was it done knowingly, but that it was done so to hide the evidence of the murder and obstruct the investigation and prosecution of the murder itself. Mr. Borchardt, is it your position then that in order to establish knowledge on the part of the state, probable cause is all that's necessary? No, Your Honor. Instead, what's needed is the state needs to have evidence before it that creates a reasonable chance of obtaining a conviction at trial. Ultimately, I think the probable cause affidavit here is something that's important because this is something that is under oath by the state's attorney filed on the day- If you've just said that probable cause is not the standard, then what's the relevance of it at all? It tells us what the state knows. Well, you just said that probable cause is not the standard of knowledge. So if probable cause is not the standard of knowledge, then the probable cause statement is irrelevant. Well, I would respectfully disagree, Your Honor, because here we have something filed under oath by the state's attorney on the day- Well, I'm saying it's filed under oath, but I mean, my very first question was very simple. Is probable cause the standard for knowledge? You said no. If probable cause is not the standard for knowledge, then don't we have to look at something else beyond just that probable cause statement? I don't believe so, Your Honor, because this is still a document that tells us what the state knows at the time of the charging instrument. And the reason I mention it's under oath- You do understand the fallacy of that argument, don't you? No, Your Honor, I don't believe so. Let's break it down. The very first question I asked you was, is probable cause the standard upon which knowledge is based for purposes of compulsory joinder? You said no. Now you're arguing the probable cause statement as the basis for the standard, or as the standard for knowledge, which is exactly the opposite of the answer you just gave. Well, perhaps, Your Honor, I'm not explaining myself to the best of my ability here. My ultimate point here is put aside for the fact that this is a document that does establish probable cause. However, it is still a document that tells us what the state knows at the time of the charging. And I still think that's something that is able to be used to establish what the state knows and whether- I'm not arguing with you. I agree with the last part of your statement. I agree that it is something that can be used. But in your brief, and it appears in your argument, you're hanging your hat on the probable cause statement as sufficient evidence of the state's knowledge. Well, I would also point this court's attention to Reser, which is the case that we are setting as additional authority. In that case, this court did look to the probable cause documents to help establish knowledge as well. So this is basically an extension of that argument as well, Your Honor, is that, hey, let's take a look at this probable cause document. Yes, it's used to establish probable cause, but the key inquiry that's at issue when we're trying to determine knowledge, excuse me, is whether the state has the requisite knowledge to give it a reasonable chance of obtaining the conviction down the road at trial. It turns out it's not one act, and does the knowledge issue even become an issue? So in terms of a one act, one crime issue? If it's not one act, compulsory joinder is mandated only where the defendant is gauged in only one continuous and uninterrupted act. Independent overt acts that constitute different offenses are not required to be joined because they are not offenses based on the same act. Correct. So if it's not the same act, does knowledge matter at all? In that case, it would not, Your Honor, because we have to have all three pieces here. We have to have the same jurisdiction, which I don't think is at issue in this case. This is all events arising in Rock Island County. And then you also have to have the knowledge piece and the based on the same act piece. So if you don't have the based on the same act piece, then you don't have charges that are required to be compulsory joined. But speaking of that based on the same act piece, I'll transition right into that. I think one thing that our Supreme Court in Hunter has recognized is that when we're determining whether something is based on the same act, we don't give it a hyper-technical interpretation to create multiple acts based on discrete moments in time. This court has recognized that principle in Reser on the case we're setting as additional authority. And in that particular case, the defendant was initially charged with aggravated domestic battery for strangling the complainant and subsequently aggravated battery in a public way. Two counts of it, one for pushing the complainant into a pole and one for pushing her into a building. And ultimately, this court found compulsory joined or applied in that the offenses were based on the same act because the offenses were, quote, entirely intermingled with each other. And I think we could say the same. Counsel, let's think about... There's a very practical consideration under the Williams rule, and that is we don't want to artificially divide up things that if we look at it are going to be one thing. We don't want to try and say, oh, wait, now there he strangled, oh, wait, no, there he pushed her up against a pole when you're really looking at one sequence of events that are so interconnected that it would be artificial to divide them. But what about a case like Gooden where there was a break-in, then there was a battery, then there was a sexual assault, and the Supreme Court said that's not one continuous and uninterrupted act. That sounds closer to the events in this case than Reznor does. So I would respectfully disagree with that, Your Honor. Again, Hunter, our Supreme Court said we're not trying to create discrete moments in time. Well, Mr. Burkhart, to that point, because you do rely on Hunter a bit, and you actually reinforce your argument about Hunter in your reply, Hunter also says, indisputably, the legislature did not intend to impose joinder on offenses that, quote, arise from a series of acts which are closely related with respect to the offender's single purpose or plan, end quote. That sounds much more like what Justice Doherty is asking you about. Yeah, and that's something that Reznor acknowledges as well. But Reznor still found the compulsory joinder applicable here because it found the offenses were entirely intermingled. And I think in this case, the offenses are entirely intermingled as well. For one of the offenses is obstructing justice for the murder, and then we have the murder itself. You can't obstruct the murder without the murder itself. So it's inefficient to separate those and litigate those on two separate occasions. I think that would strike against the whole purpose of compulsory joinder in the first place, which is to avoid these piecemeal prosecutions. We'd be pulling Mr. Null back to court on multiple occasions. Well, your argument about obstructing justice was a one-act, one-crime issue with regard to the aggravated arts, right? So there's a one-act, one-crime issue there as well, but there's also a compulsory joinder issue with the murder. The issues that you raise on compulsory joinder were primarily the murder and the aggravated votes. Correct.  And the obstructing justice is part of it, too. Would you agree that the facts would appear to establish that it is more likely than not that your client strangled the victim first, ransacked the house, took all the stuff out of the parents' bedroom, took the guns, took the jewelry, then set her on fire before he left? I mean, he's not likely to set her on fire and then hang around stealing stuff, right? He doesn't know how fast the fire's going to burn or how slow it's going to burn. So isn't the evidence logically pointing to the commission of the murder, the burglary of the house, the stealing of the theft of the items from the house, and then the setting her on fire? Well, Your Honor, unfortunately, the record isn't entirely clear with regard to the order of events here. Well, I mean, that's true. That's true. But I mean, looking at the evidence that was presented at trial, it's clear that she was dead before the fire started, right? Correct. Okay. So that means the death came first. So we've got that one pinned down. Now, it's not likely that he's ransacking the house while she's alive. One would anticipate there'd be some sort of evidence of a struggle, of some sort of issue. But instead, you've got a dead body. Then you've got evidence that he's clearly taken his time to go through the house. He's opened up drawers. He's taken things from the closets. He's opened up cases. So he's taken his time to go through and take out a number of items. Then there's the fire. Again, logically, he's not likely to start the fire and then start looking through the house. So I think it's reasonable to conclude that the series of events is murder, thefts, aggravated arson. Why is that one continuous act? Sure. I would push back on the premise there just a tad bit here. I mean, it's possible. It is entirely possible he set the fire and then committed and started taking the items, the guns, the jewelry, so on and so forth. I mean, there are some things that circumstantially point to that being the order of events. I mean, you have the smoke detector that was removed from the ceiling. I think that could potentially mean that he started the fire and then he started rummaging through the items. He doesn't want it to go off when he does start the fire. That is another reasonable interpretation. I think there are multiple reasonable interpretations based on the smoke detector being removed. But there's also the fact that we have gun cases laid about, the drawers were all removed and all over the place. I mean, the house was a mess. So it's possible that he could have set the fire and then was trying to quickly do this to get the items and then get out of there as quickly as possible. Unfortunately, it would be nice if we had a record here in terms of the order of the things that occur, but that's unfortunately something that we just don't have. But doesn't that become your problem? Don't you need that factual record to make your argument? I don't believe so, Your Honor, because there is a reasonable, it's reasonable to infer that it could have been killing, fire, then theft. That's a reasonable interpretation here as well. That is a reasonable interpretation, I suppose. But don't we need to have some better understanding of the facts if you're going to base an argument on one version of the facts? Well, fortunately, Your Honor, I can't change the facts here. Ultimately here, even if we're going to say that the theft came between the murder and the fire. I still would argue that the fire and the murder were still based on the same act because they are still intertwined. Of course they're intertwined, but if he had left and come back six hours later and set the fire, they would be intertwined in the same way, which is there's a purpose that one serves related to the one that preceded it. I don't think that jibes with the case law on what it takes to mean one continuous and uninterrupted act. Well, I would again point this court back to Reznor. In Reznor, this court looked at, okay, this is the same defendant doing these things against the same person in the same period of time. But you understand in Reznor, it would be if you were on the street observing, you'd say, hey, that guy is beating up that girl. We didn't split out, well, here he strangled her and then here he pushed her up against the pole. That would be artificial. That would be pulling apart what our eyes tells us is one act. That's not what we have here. But I would respectfully disagree here just given the facts of this case and just based on what this court looked at in Reznor, the language used in Reznor, I would respectfully disagree with your honor. But I do recognize I have a little bit of time left. I do want to make sure I touch upon the other issue I said I was going to talk about with regards to failing to consider the mitigation factor. So the court is required, the trial court in sentencing a defendant is required to consider certain factors in mitigation by statute. And in this particular case, one of the things that the court is required to consider if it's applicable is that there are substantial grounds tending to excuse or justify the behavior even if it does not constitute a defense. Although the trial court does not have to consider meth addiction or meth usage in mitigation per se, in this particular case it was required to do so because those were the grounds, excuse me, the substantial grounds excusing the behavior here. And I think it's quite clear that Mr. Null's meth usage here contributed to these offenses. Mr. Null is someone who had no criminal history before these offenses. He's someone who was described as being peaceful and having a glowing character recommendation. You agree that drug addiction is neither a statutory factor in mitigation or aggravation, correct? Correct. I do recognize that. It's not something that is considered a mitigation per se. The client himself says he was aware of how he becomes a much more violent person on meth, correct? That's something that his friend said in Form 10, yes. He said that. No, he said that. He made that statement. He said, my friends tell me. So, I mean, it's not like it's his friends are the only people that said it. He said it himself to the police, correct? He did tell the police that, but, Your Honor, it is something that he told his friends. And he tells the police that other person comes out. When I do meth, the other person comes out. That is what he told the police based on what his friends told  Why is that not something that could be considered an aggravation as opposed to mitigation? So, this court, the court, I think his meth usage overall, I'm not going to disagree that it can be used in aggravation, but it also is something in this particular case was required to be used in mitigation. It was the substantial grounds excusing or justifying his behavior. He is someone that does not have a criminal history. He only becomes violent when he's on meth. It's not like he's someone who's murdering people or setting people on fire just for fun. Did the court hear an argument of its use in mitigation? I believe the trial counsel did attempt to make this argument, yes. So, the courts heard both evidence of it as aggravation and evidence in mitigation. Correct? It may have heard it, but it did not consider it in mitigation given its explicit comment. Well, you're saying that it didn't consider it because you don't see him saying, I consider this as mitigation in the record. The court said it only was considering it in aggravation. Okay. So, the court weighed the evidence it had in front of it and made the election that it saw this as an aggravating factor as opposed to a mitigating factor. Drug addiction, of course, as we've had in a number of cases, gets referenced many times as a double-edged sword. It can sometimes work in aggravation, sometimes in mitigation. The court elected, through its discretion, based on the evidence it had in front of it, to find that this was a matter in aggravation. We're supposed to reverse that? So, the court said, generally, it is a double-edged sword. However, what the court specifically said, its specific comment was, in this case, I am only considering it in aggravation. That's a paraphrase of what the court said. And it's not allowed to do that? No. Having heard arguments from both sides. Because in this particular case, Your Honor, it was the court that was identifying his behavior. That's your argument. Is there evidence of that? Yes. There was plenty of evidence of it introduced at trial. We have evidence at trial that he was only violent when on meth. And we also have evidence presented at trial, I'm sorry, at sentencing, that he was otherwise a peaceful or a great guy. He had great recommendations, great character letters and great support from his friends and family members. Okay. So, I do recognize I am short on time at this point. So, I'll just briefly conclude and respectfully request that this court find that counsel is ineffective for not moving to dismiss the new and additional charges in the superseding indictment, remand for a new sentencing hearing and or grant the other relief as requested. Thank you. Thank you, counsel. Ms. Kuhn. Good morning, Your Honors. And good morning, counsel. Katrina Kuhn for the people of the state of Illinois. May it please the court. I will respond to Mr. Borchardt's points and, of course, answer any other questions the court has. Just on the compulsory joinder issue, Your Honors have correctly identified the analysis as requiring both the same act and knowledge. And just on the same act requirement, you know, the issue is whether we do have evidence that the victim was deceased prior to the fire that was in the autopsy. The defendant murdered the victim by strangling her. Then, you know, performed all the other acts that Your Honors have talked about, the setting the body on fire. Separate acts. And, you know, Hunter does not require a compulsory joinder even when they are part of a single purpose or plan. As to the knowledge requirement, you know, counsel focuses on the process. Counsel, before you go on to the next part of your question,     I would like to ask you a question. I think you are opposing counsel is right that we don't know exactly the sequence of events inside the house. But I suppose we rarely will. Whose problem is that? You are right. We would never exactly know. I think in this case, what we do have is we have evidence of separate events inside the house. And that we have a strangulation and we have a setting on fire. And those are clearly not based on the same physical act. I think it's defendant's burden. Defendant has the burden of compulsory joinder. So I think that that is, you know, where the burden lies. And as to knowledge, you know, defense counsel relies on the probable cause. I don't have a probable cause. But what occurred after that is set out in pages seven and eight of my brief. The fire marshal testified at trial that he had to rule out accidental ignition sources of the fire. And fire investigations take time. Mr. Brown, the fire marshal testified he could not make a causation finding until the HTF report was received. To me, and that is responsible prosecution. That is not, you know, throwing charges out before they can be proven. There was no, you know, The state needed to know if the fire was set intentionally and if the perpetrator intended to destroy or conceal evidence before it could make these, before it could make those charges. And as soon as the. ATF report was, was received. The defendant was re-indicted. And he was arraigned the very same morning. So there is no, nothing that defendant can point to, to show any kind of delay. This is not a piecemeal prosecution. And. Again, it's defendant's burden under Strickland to show that counsel. Performed unreasonably here. You know, we can assume that the discoveries in the record. You know, council defense council looked at the record, looked at discovery and elected not to file a compulsive rejoinder. Issue. And, you know, the council is not required to make futile motions. And. I'm sorry. Moving to the evidence of the mitigation argument. Your honors have noted that. That is that drug use drug addiction is not an explicit factor in aggravation or mitigation. The court expressly addressed it and found it aggravating. The court is presumed to have considered every all evidence presented to it here. The court did consider it. The court was not required to find it. Mitigating. And what is important at sentencing is. It's it's not just. The term of years that the defendant receives. The most important factor in sentencing is the seriousness of the offense. This is an extremely serious offense. The court was not required to mitigate defendants. Punishment in any way, shape, or form. There's a need to protect society here. If you have a, you have a drug addicted person who knows that they are, you know, They know that they are addicted and need for deterrence. And the court also could determine that this defendant had a very low rehabilitated potential. The court considered the fact could consider the fact that, you know, defendant then proceeded to, after leaving the scene, proceeded to then use the victim's father's credit card. And he proceeded to brag to his former girlfriend about his crimes. I mean, there was plenty of, of, of, of. There was plenty of facts here under which the court could determine that this defendant was not entitled to anything lower than a maximum sentence. Excuse me, your honors. I'm sorry. And. Yes, sir. Could I possibly redirect you to another issues that Mr. Bork card, because I kept him busy with questions. Yeah, sure.  One is unfortunately didn't get a chance to to argue, but he argues in his brief about the one act one crime rule. As it relates to obstructing justice. And the aggravated arson, as well as the theft conviction and the aggravated possession of a stolen firearm. Yes, sir. Well. Did you have a specific question or I can. Well, I, I'm wondering what your argument is with regard to the, both of those. Yes, sir. My, my argument is. That the prosecution can, can, can secure multiple convictions. If there are multiple acts or multiple victims. As to the aggravated arson and obstructing justice charges. Here. Yeah, there were, there were people argue there were multiple acts and multiple victims. The yes, there was a fire set. The defendant also put a cloth over the victim's face for the purpose of. Apparently trying to mask her identity or make it more difficult for the, for the. Authorities to identify her or, or may perhaps to mask the, the evidence of strangulation, which didn't work because the bone was broken so that survived the fire. There were also multiple victims in, in, in all of these, in both of these one act, one crime analysis, there were multiple victims. Mr. Windish, you know, the, the victims. Mr. Winters, the victim's father was the property owner. You know, he is a, he has a victim. And, you know, there are many potential victims in property crimes. And, you know, there was. As I've argued in my brief, there are many victims to an obstructing justice charge. And as far as the, the other one act, one crime analysis is. Aggravated possession of a firearm and felony theft. There were multiple acts that the defendant took weapons, which was the. You know, the firearm charge and felony theft, because there were additional items that were taken after the, in addition to the, the weapons that were rings, watches, coins. You know, the possession of the weapons could be the sole basis for the firearm charge. And that could be the partial basis for the felony theft charge. And that is in Shoberly, which is the case that I appended to my brief. And the Illinois Supreme court in sham made clear that separate victims require separate convictions. And so, yes. Those will be my arguments. Thank you. And if I, if I could just briefly address, address the restitution argument, the people, the people acknowledge that there needs to be a method and manner of restitution in the, by the trial court. However, the trial court is not required to expressly find that this defendant had any ability to pay. And so any remand, the only remand that the people would would acknowledge might be necessary is a remand that's limited to the method and manner of payment of restitution by the defendant. If your honors had no more, any more questions, I would stand on my brief. All right. Thank you. Counsel, Mr. Borkhardt, your reply. Yes. Thank you. Just, I guess hitting off on the restitution piece first. I just want to make clear that the, the ability to pay restitution, the state is correct. It's not something to be considered and whether restitution is to be paid in the first place. I, if my brief is able to be read that way, I apologize. That's the manner or method of payment does need to be, or I'm sorry, the ability to pay needs to be considered and setting the manner of math manner and method of payment. And that's, that's something that was not done here, which I think just based on the, on the state's brief here is something that they have conceded, but I will talk about the one neck one crime issue here a little bit because there are some questions about it with regards to the obstructing justice and aggravated arson. There's really only one single actor. That's the act of setting the fire. And this is really the first time that the state is arguing that there really is more than one act here below the state. Didn't argue that there was more than one fire. There simply was one fire that the fences are based off. Mrs. Mr. Null setting one fire. Yes, your honor. Aren't there two different victims. That is something that is irrelevant for purposes of this case, because these are offenses directed at property. And I cited a case in my reply brief that could, that demonstrates that. I mean, are giving aggravated arson. Is it a fence at property? It's it's. Goes towards a building, a structure, something you set on fire, whether that be real property or personal property. And so it's not just a case of setting fire to a building.  I'm structuring justice burning the body, but the resultant effect is. The burning of the house. Correct. And that is what a way that aggravated arson was charged here. It was the vehicle was, was burning the body, but the result was burning. The house here. And that's the way that, that it's statutorily defined as well. It's the statutory definition that matter. In that case is what. So she's, she's deceased, but it's the bigger picture here. The aggravated arson is. I'm sorry. She's Kaylee Wendish. No, it's the owner of the house. It's burn. Remember you said it was a property. I apologize. I thought you were talking about who was the person who was burned, but ultimately the way the offense is statutorily defined. That's what matters under the case law. I said it in my brief is the statutory definition of who is to find it as occurring at. That's what matters. And it's defined as occurring against the property. And it's the same way for obstructing justice as well as directed against evidence or property. So that demonstrates that, that the multiple victim exception here does not apply to the homeowner is the victim in that case. For aggravated arson, the way it's charged, it was damaging the house of John Wendish.  Who's the victim in the obstruction justice. The victim in an obstructing justice, I believe is it probably society as a whole. Correct. But ultimately who the victim is, is not something that matters in this particular case, because the effect, the offenses are statutorily defined as being directed against property, not people. Well, the obstruction of justice was not directed against property. But the, but it's the statutory firing to hide the evidence, but the statutory definition is directed at property is directed at evidence or property. It's the statutory definition that controls. I'm actually, I'm afraid I'm, you've lost me. So that's my limitation, not yours. So I'll try to explain it better,  So I believe it's the, the case is hardened. The in hardened, they looked at the statute and they said, okay, what are we really trying to criminalize here? In hardened, if the defendant was charged with two counts of aggravated discharge of a firearm in the direction of a police officer or a vehicle occupied by a police officer, and there was only one shot fired and the court ultimately determined that one act, one crime principles applied because even though there was one shot and there were multiple police officers in this police vehicle, ultimately the offense was directed at the vehicle. It was not aggravated discharge of a firearm in the direction of the police officers themselves. It was aggravated discharge of a firearm and towards a vehicle occupied by them. So the vehicle was the subject of the offense. It's the same thing here. The house was the subject of the offense, at least for purposes of aggravated arson. Excuse me. And the body at Kaylee's body was the subject of the obstructing justice. And I do recognize I'm just about have five seconds left. So I would respectfully request the relief that's outlined in the briefs. All right. Thank you. Counsel the court will take this matter under advisement and now stands in recess.